O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH JIMENEZ | ) | Case No. CV 08-08403-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Elizabeth Jimenez seeks judicial review of the Commissioner's final decision denying her application for Social Security Disability Insurance ("SSDI") benefits. For the reasons stated below, the matter is remanded for an award of benefits.

I. **Procedural and Factual Background**

Plaintiff filed her application for SSDI benefits on February 6, 2003, alleging disability as of July 22, 1992 due to post-surgical back and knee pain, anemia and depression. (Administrative Record ("AR") at

128.) Plaintiff was born in 1957. She has a high school education and attended two years of college. She has worked as a nurse and medical office manager. (AR at 141, 146.) Plaintiff was insured for disability benefits through December 31, 2000.[1]

Plaintiff's application for benefits was denied initially and upon reconsideration. (AR at 82-85, 88-91.) An administrative hearing was held November 17, 2004 before Administrative Law Judge ("ALJ") Helen E. Hesse. (AR at 48.) On March 11, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (AR at 60-61.) Plaintiff's request for review was denied by the Appeals Council on December 22, 2005. (AR at 6-10.) Plaintiff then sought review in this Court. On December 20, 2006, this Court remanded the case to the Commissioner for further proceedings. (AR at 1095.) The Court found that ALJ Hesse failed to provide a legally sufficient basis for discrediting Plaintiff's allegations of pain. *Jimenez v. Barnhart*, CV 06-1145-MLG. (AR at 1085-1094.)

On March 25, 2008, a second hearing was held before ALJ Hesse. (AR at 1109.) On May 14, 2008, ALJ Hesse issued a decision determining that Plaintiff was not disabled. (AR at 1055-1068.) ALJ Hesse found that Plaintiff suffered from the following severe impairments: status post L2-3 microdiscectomy and L5-S1 fusion with instrumentation; status post left knee arthroscopic surgery; status post right knee arthroscopic

---

[1] In order to qualify for disability insurance benefits, Plaintiff is required to establish that she was disabled on or before the date of termination of her insured status. 20 C.F.R. §404.131(b)(1); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). Plaintiff was therefore required to establish that she was disabled on or before December 31, 2000 in order to be eligible for disability benefits.

surgery; status post second left knee arthroscopic surgery; status post second right knee arthroscopic surgery; and disc herniation at T5-6 with neck surgery in March of 1999. (AR at 1057.) However, the ALJ determined that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Id.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: Plaintiff was precluded from working at unprotected heights, climbing ladders, or being around hazardous machinery; she also was able to reach above shoulder level bilaterally on occasion, but could not maintain any neck position on a prolonged basis or constantly change neck positions. (AR at 1057-1058.) Based on this RFC, the ALJ concluded that Plaintiff would be capable of performing her past relevant work as a medical assistant. (AR at 1068.) The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. (Id.) On October 28, 2008, the Appeals Council denied review, and ALJ Hesse's second decision became the final decision of the Commissioner. (AR at 1044-1046.)

On January 9, 2009, Plaintiff timely commenced this action for judicial review. On August 12, 2009, the parties filed a Joint Stipulation ("Joint Stp.") of disputed facts and issues. Plaintiff contends that (1) the ALJ's RFC assessment was not supported by substantial evidence and (2) the ALJ failed to properly evaluate Plaintiff's subjective symptoms and credibility. (Joint Stp. at 2-3.) Plaintiff seeks reversal of the Commissioner's denial of her application and payment of benefits. (Joint Stp. at 15-16.) The Commissioner requests that the ALJ's decision be affirmed, or in the alternative, remanded for a new administrative hearing. (Joint Stp. at 16-17.) Because this Court finds that Plaintiff is entitled to relief on the

claim that the ALJ failed to properly evaluate her credibility, the Court will not address Plaintiff's other claim of error.

Because both parties are familiar with Plaintiff's lengthy medical history, the Court will only provide a brief summary of the relevant medical records.[2] Plaintiff first injured her back in February of 1986 while stacking supplies. She re-injured her lower back in April of 1991, while lifting and stacking storage boxes, and again on May 15, 1991, when she turned in her chair at a staff meeting while holding a stack of papers. An MRI of the lumbar spine on July 1, 1992, revealed "moderate midline disc bulge seen at L2-3" and "mild desiccation and midline disc bulge seen at L5-S1." (AR at 709-710.) The condition of Plaintiff's lumbar spine continued to worsen, eventually leading to back surgery on February 22, 1994.[3] (AR at 610.)

In June of 1993, Plaintiff fell and landed on her knees on a cement floor, and she began to complain of pain in both of her knees. A MRI performed on Plaintiff's left knee in October of 1994 revealed a medial meniscus tear. (AR at 533.) Left and right knee surgeries were performed

---

[2] Plaintiff was treated by at least thirty-five physicians during the time period at issue. (AR 708-729.) The summary that follows is taken primarily from the medical reports of orthopedic surgeon Dr. Gil Tepper, who performed all of the surgeries on Plaintiff. As discussed below, only Plaintiff's orthopedic impairments are relevant to this Court's decision. Plaintiff also allegedly suffers from other physical and mental impairments that do not require discussion.

[3] The lumbar surgery included the following procedures: 1. Micro laminotomy and diskectomy, L2/3 on the right. 2. L5/S1 laminectomy, Gill procedure. 3. Total diskectomy posterior lumbar inner body fusion. 4. Neurolysis of the L5 and S1 nerve roots bilaterally. 5. Posterior lumbar inner body fusion using allograft.

on December 9, 1994,[4] and July 5, 1995,[5] respectively. (AR at 601, 606.) Plaintiff continued to experience "mechanical symptoms, recurrent effusions, buckling, catching, and giving-way episodes" with her right knee, and a second surgery was performed on August 26, 1997.[6] (AR at 596.) A second left knee surgery was performed on February 15, 2000.[7] (AR at 589.)

On November 22, 1994, Plaintiff reported that she fell and struck her right shoulder, and was experiencing shoulder pain. Dr. Tepper diagnosed Plaintiff with grade I acromioclavicular ligament strain of the right shoulder. (AR at 529.) Plaintiff subsequently complained[8] of pain in her neck, shoulders, and between her shoulder blades, and a MRI of the cervical spine performed on April 5, 1996 revealed "[c]entral 3mm C5-C6 disc herniation with left neural foraminal narrowing." (AR at 508, 511.) Plaintiff was eventually diagnosed with C4-5 and C5-6 disc

---

[4] The following procedures were performed: 1. Left knee chondroplasty, medial patellar facet. 2. Chondroplasty, lateral tibial plateau.

[5] The following procedures were performed: 1. Right knee arthroscopic chondroplasty, medial patellar facet and medial femoral condyle. 2. Extensive plica resection and synovectomy.

[6] The following procedures were performed: 1. Right knee arthroscopic chondroplasty, weightbearing dome, medial femoral condyle. 2. Right knee arthroscopic chondroplasty, trochlea. 3. Right knee arthroscopic removal of loose bodies.

[7] The following procedures were performed: 1. Left knee arthroscopic chondroplasty, medial femoral condyle and patella. 2. Left knee arthroscopic removal of loose bodies. 3. Synovectomy and resection of plica.

[8] There is a gap in the records from Dr. Tepper between March 16, 1995, and April 28, 1996. Plaintiff did not complain of neck pain at her March 16, 1995 examination, and a MRI of the cervical spine was performed on April 5, 1996. Plaintiff's pain presumably began at some point between those two dates.

herniation with central and lateral cervical canal stenosis with kyphosis and segmental instability. (AR at 591.) Plaintiff underwent cervical spine surgery on March 25, 1999.[9] (Id.)

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

---

[9] The following procedures were performed: 1. Anterior partial vertebrectomy, C4 and C5. 2. Anterior total nuclear diskectomy, C4-5 and C5-6. 3. Anterior interbody fusion, C4-5 and C5-6. 4. Open reduction with internal fixation, C4-5 and C5-6. 5. Bilateral foraminotomy and neurolysis of the exiting C-6 nerve roots under microscope. 6. Allograft shaping. 7. Autologous bone harvest. 8. Continuous intraoperative spinal cord evoked potential monitoring.

### III. Credibility of Plaintiff's Pain Testimony

Plaintiff claims that the ALJ erred by improperly discrediting her subjective complaints of pain. (Jt. Stip. at 12.) To determine whether a claimant's testimony about subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. July 8, 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain is reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).[10]

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883. "General

---

[10] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell*, 947 F.2d at 346 n.3.

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

At the first administrative hearing before the ALJ on November 17, 2004, Plaintiff testified about the type and severity of pain she experienced during the relevant time period, and the physical limitations imposed by such pain. (AR at 1030-1041.) Plaintiff testified that during and since the relevant time period, she has been experiencing painful swelling, popping, and grinding, in her knees; that she is not able to walk for more than ten minutes, or sit or stand for an hour, without experiencing pain in her knees; that she experiences constant pain in her thoracic spine that extends to the middle of her chest, the severity of which she rated as a six on a scale of one to ten; that she experiences lower back pain that she would rate at eight out of ten, even after the lumbar surgery; that ever since the initial injury in 1991, she experiences numbness and tingling in both legs; that she experiences neck pain and severe headaches on a nearly daily basis, which affects her ability to concentrate; and that the injury to her right shoulder limits her ability to do things such as lift, reach, comb

her hair, or fold clothes.[11]

Plaintiff has met her burden of producing objective medical evidence of underlying impairments that are reasonably likely to be the cause of the alleged pain, thereby satisfying the threshold issue required by *Bunnell*. As *Bunnell* makes clear, once a claimant has produced evidence of an underlying impairment — which Plaintiff has as to her lumbar spine, cervical spine, right shoulder, and both knees — the ALJ "may not discredit the claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective evidence." 947 F.2d at 343. Once Plaintiff met this step, the ALJ was required to offer specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding her pain and other symptoms affecting her ability to work.

The ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's allegations of pain. "To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" *Vasquez*, 572 F.3d at 592 (quoting *Dodrill v. Shalala*, 12

---

[11] The Court notes that, at the second administrative hearing held on March 25, 2008, ALJ Hesse, rather than inquiring into Plaintiff's subjective complaints of pain and attending physical limitations, focused primarily on irrelevant issues. For example, ALJ Hesse questioned Plaintiff on such matters as why she receives her mail at a post office box rather than a mailing address (AR at 1113-1114); how many times she has been married and who the father of each of her children is (AR at 1120-1123); whether she regularly attends church and the reasons why she does not (AR at 1124-1126); when she changed the name on her California driver's license to her new married name and why she could not remember the exact date (AR at 1126-1129); and how she met her deceased husband, including how long they were living together before marriage (AR at 1129-1130). To the extent that the ALJ relied on Plaintiff's testimony at the second administrative hearing in reaching her adverse decision regarding Plaintiff's disability, this testimony was largely irrelevant and had no bearing on determinations of credibility or disability.

F.3d 915, 918 (9th Cir. 1993)). As in the ALJ's first adverse credibility determination, the ALJ has again failed to point to specific facts in the record to support her conclusion that Plaintiff is not fully credible. For example, the ALJ repeats verbatim her statement from the first decision denying Plaintiff disability benefits that "the medical evidence does not support the conclusion that [Plaintiff's] ability to perform her activities of daily living was so confined," yet, as before, the ALJ fails to cite to any specific evidence, medical or otherwise, in the record to support this conclusion. (AR at 57, 1065.)

In addition, the ALJ discredited Plaintiff's pain and symptom testimony for various reasons, none of which are clear and compelling. The ALJ noted that Plaintiff "attends her numerous doctors' appointments, drives a car, does grocery shopping, laundry, and generally got along well with family and friends." (AR at 1065.) Plaintiff's ability to go to her doctor's appointments[12], perform some basic household chores, complete sporadic activities and "get along" with family and friends is not inherently inconsistent with her complaints of pain. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [or] driving a car ... does not in any way detract from her credibility as to her overall disability."). While a claimant's activities need not amount to work activity to undermine a claim of disability, *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999), an ALJ may not reject a claimant's testimony simply because she engages in minimal daily activities despite her

---

[12] Indeed, one can surmise that had Plaintiff not gone to her doctor's appointments, that would have been a basis for rejecting her credibility.

10

impairments. *Vertigan*, 260 F.3d at 1050; *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.2007). Further, as Plaintiff testified at the second hearing before the ALJ, Plaintiff's husband performed almost all of the household chores. (AR at 1138-1139.) Accordingly, Plaintiff's ability to perform some household chores was not sufficient to support the rejection of Plaintiff's pain testimony.

The ALJ also discredited Plaintiff's subjective complaints of pain because each of Plaintiff's seven surgeries was apparently successful. (AR at 1065.) As the Court noted in its first remand, there is no evidence that successful back, neck and knee surgeries necessarily alleviated all of Plaintiff's pain. *See Vasque v. Barnhart*, 2002 U.S. Dist. LEXIS 14933, *37 (N.D. Cal. 2002); *Bunnell*, 947 F.2d at 343. Finally, as previously noted, some of the underlying impairments existed well before Plaintiff underwent surgery. The technical success of Plaintiff's surgery is irrelevant in determining whether Plaintiff's pre-surgery impairments were disabling.[13] Therefore, this is not a clear and compelling reason for rejecting Plaintiff's subjective complaints of pain and other symptoms.

Finally, although the ALJ adduced a number of other reasons for not fully crediting Plaintiff's subjective pain testimony, upon review of the record, this Court concludes that the reasons given for discrediting Plaintiff's testimony are founded solely on a lack of objective medical evidence. The ALJ found that Plaintiff was not fully credible because she does not need assistive devices for ambulation, has no abnormalities

---

[13] The ALJ also stated that Plaintiff's injuries and surgeries "would have required some disability time prior to and after each surgery." (AR 57.) The Court was unable to discern from the ALJ's decision any clear and convincing reasons why the respective periods of disability did not last for the twelve-month period that is required to qualify for benefits. 20 C.F.R. § 404.1509.

11

of gait, and has not exhibited consistent evidence of diffuse atrophy or muscle wasting. (AR at 1065.) While the ALJ may "consider" functional restrictions caused by a claimant's symptoms, *Smolen*, 80 F.3d at 1284, so long as Plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence. *Bunnell*, 947 F.2d at 346-47; *Smolen*, 80 F.3d at 1281; *see also* 20 C.F.R. § 416.929(c)(2); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). Here, the ALJ appears to have violated this principle concluding that Plaintiff's complaints were not borne out by the objective medical evidence. These reasons cannot, therefore, be considered substantial support for the ALJ's credibility determination.

For the reasons stated above, the record shows that the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony.

## IV.   **Award of Benefits**

Upon determining that the Commissioner erred in denying benefits, the Court may remand the case for further proceedings or award benefits. Under the "crediting as true" doctrine, evidence should be credited and an award of benefits is appropriate where (1) the ALJ improperly rejected relevant evidence in the record; (2) no outstanding issues prevent a disability determination from being made; and (3) the ALJ would be required to award benefits if the improperly rejected evidence were credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)(citations omitted); *see also Lingenfelter*, 504 F.3d at 1041 (citing *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1998)).

Here, the ALJ again failed to provide legally sufficient reasons for rejecting Plaintiff's pain and symptom testimony, despite being required to do so by this Court's previous remand order. In cases "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will ... take that testimony to be established as true." *Vasquez*, 572 F.3d at 593 (quoting *Varney*, 859 F.2d at 1401.) If Plaintiff's testimony as to her pain and other symptoms were credited as true, it is clear that Plaintiff would be considered disabled under the Social Security Act. There being no outstanding issues to resolve through further administrative proceedings, an award of benefits is appropriate.

**V.   Conclusion**

For the reasons stated above, it is **ORDERED** that the case be remanded for an award of benefits.

DATED: August 21, 2009

_____
MARC L. GOLDMAN
United States Magistrate Judge